IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION


| | |
|---|---|
| TRENISS JEWELL EVANS III, ) | |
| DOMINIC PEZZOLA, ) | |
| EDWARD JACOB LANG ) | |
|     *Plaintiffs* ) | |
| ) | |
| *Vs.* ) | Case No. 4:22-cv-00682-SDJ |
| ) | |
| THE SELECT COMMITTEE ON ) | |
| JANUARY SIX ) | |
| BENNIE THOMPSON, ADAM ) | |
| SCHIFT, ZOE LOFGREN, ELAINE ) | |
| LURIA, PETE AGUILAR, ) | |
| STEPHANIE MURPHY, JAMIE ) | |
| RASKINS, ELIZABETH CHENEY, ) | |
| ADAM KINZINGER ) | |
|     *Respondents* ) | |


APPLICATION FOR TEMPORARY RESTRAINING ORDER
PENDING RELIEF BY PERMANENT INJUNCTION

This relief is sought pursuant to the provisions of Rule 65(b)(1)(A)(B) F.R.Civ.P.,

in that immediate and irreparable injury, loss, or damage will result to the

applicants before the adverse party can be heard in opposition.


I.                     FEDERAL JURISDICTION

Jurisdiction over the persons of the parties is invoked onto this Court under

Article III, Section 2, Clause 1, or alternatively pursuant to diversity jurisdiction

under the provisions of 28 U.S.C. § 1332 (a)(1); (c)(1), in that Respondent Thompson from the state of Mississippi, Schiff from the state of California, Lofgren from the state of California, Luria from the Commonwealth of Virginia, Aguilar from the state of California, Raskin from the state of Maryland, Cheney from the state of Wyoming, Kinzinger from the state of Illinois, Cable News Network from the state of Georgia and Murphy are residents of different states for the relevance of diversity jurisdiction under (a)(1). The Court's diversity jurisdiction as it relates to the Select Committee on January Six is invoked under the veil of corporate agent(s)[1] pursuant to provisions of 28 U.S.C. § 3002 15(A)(B)[2].

II.         <u>VENUE OF THE FEDERAL COURT</u>

Proper venue in this matter is predicated upon 28 USC § 1391(e)(1)(A)(C).

---

[1] 28 U.S.C. § 3002 (**15**)"United States" means—(**A**) a Federal corporation; (**B**) an agency, department, commission, board, or other entity of the United States;

[2] We think, it was not intended to apply it to a purely political or governmental corporation like the United States United States v. Perkins, 163 US 625 - Supreme Court 1896 Id 631. "In this extensive sense, the United States may be termed a corporation. . . . "); See also *Nigiraingas v. Sanchez,* 495 U.S. 182 (1990) *Van Brocklin v. Tennessee,* <u>117 U. S. 151</u>, <u>117 U. S. 154</u> (1886) ("*The United States is a . . . great corporation . . . ordained and established by the American people. . . . "'*) (quoting United States v. Maurice, 26 F. Cas. 1211, 1216 (No. 15,747) (CC Va.1823) (Marshall, C.J.)); <u>Cotton v. United States</u>, 11 How. 229, <u>52 U. S. 231</u> (1851) (United States is "a corporation").

III.    The gravamen of the Applicant's cause for injunctive relief is predicated under Texas state tort law having a liability nexus to the state criminal offense of Official Oppression[3],  under Texas penal statute § Sec. 39.01 (1)(A) and § 39.03(2) and for the purpose of the Court's emergency enjoining of relief.[4] Accordingly the Committee's video broadcast extended into the state of Texas for the purpose of Texas statutory criminal law application.  It is clear that a violation of a criminal statute may provide the basis for tort liability. See – *Crosstex N. Tex Pipeline, L.P. v. Gardiner*, 505 S.W. 3d 580 (Tex 2016).  Where the instant claim is predicated upon state tort law, state law will govern the action whether it is tried in federal or state court. See -  *Baker v. McCollan* , 443 U.S. 137, 146 (1979).

> "The Federal Courts and the Federal System, 1147-1150. But no general statute making federal officers liable for acts committed 'under color' but in violation of their federal authority has been passed. Congress has provided for removal to a federal court of any state action, civil or criminal , against ***''[a]ny officer of the United States*** . . ., or person acting under him, for any act under color of such office . . . ." <u>28 U.S.C. §</u>

---

[3] Sec. 39.03.  Official Oppression.  (a)  A public servant acting under color of his office or employment commits an offense if he: (1)  intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2)  intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful;

[4] "When the wrongful conduct amounts to a tort, the wrongdoer is held responsible for such injuries as result directly and naturally from such wrongful conduct, if they are such as might reasonably have been anticipated or expected. And when the tort constitutes a willful wrong, it has been held by high authority that the wrongdoer is responsible for the direct and immediate consequence thereof, whether or not they may be regarded as natural or probable, or whether they might have been contemplated, foreseen, or expected or not." *St. Louis Southern Ry. Co. of Texas v. Alexander,* 141 S.W. 35 (Tex. App. 1911) Id 136

1442 (a)(1). That state law governs the cause of action alleged is shown by the fact that removal is possible…"

IV.                    THE BENEFITING PARTIES

(a)     TRENISS JEWELL EVANS III, known from hereinafter as "Evans", who is a private citizen and is the primary plaintiff to this cause, resides in the state of Texas.

(b)     DOMINIC PEZZOLA, known from hereinafter as "Pezzola", who is a private citizen and is a plaintiff to this cause, resides in the state of New York.

(c)     EDWARD JACOB LANG, known from hereinafter as "Lang", who is a private citizen and is a plaintiff to this cause, resides in the state of New York.

(d)     DONALD J. TRUMP, known from hereinafter as "Trump", who is a private citizen but is *not* a plaintiff to the instant cause, resides in the state of Florida. Trump has a place of residence at 1100 S. Ocean Blvd, Palm Beach, FL 33480.

V.      REQUEST OF THE COURT TO JOIN DONALD J. TRUMP

The Court is respectfully requested to join Trump to the herein Application pursuant to F.R.Civ.P. 18(b), 19(a)(1)(A)(B), and 20(a)(1)(A)(B), (3)(b) so as to protect the affected Rights of Trump by awarding to him any applicable relief against the conduct of respondents. Trump resides in the state of Florida for the

purpose of diversity jurisdiction. Trump has a place of residence at 1100 S. Ocean Blvd, Palm Beach, FL 33480.

VI.                    PARTIES TO BE ENJOINED

(a)    THE SELECT COMMITTEE ON JANUARY SIX, known from hereinafter as "the Committee" is a corporate entity of the United States with its corporate base of operations having been located at First St SE, Washington, DC 20004, for the purpose of diversity jurisdiction and proper service on the parties as set out in Section II(d)-(l) to this Application. The Committee is an uncharged party to this action but performs as the collective party for the Respondents (d)-(l) and for purposes of this TRO Application

(d) BENNIE THOMPSON, known from hereinafter as "Thompson" is a resident of the state of Mississippi for the purpose of diversity jurisdiction. Thompson is Chairperson for the Select Committee on January Six. Thompson also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(e) ADAM SCHIFF, known from hereinafter as "Schiff" is a resident of the state of California for the purpose of diversity jurisdiction. Schiff is a member and

active participant to the Select Committee on January Six. Schiff, also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(f) ZOE LOFGREN, known from hereinafter as "Lofgren" is a resident of the state of California for the purpose of diversity jurisdiction. Lofgren is a member and active participant to the Select Committee on January Six. Lofgren also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(g) ELAINE LURIE, known from hereinafter as "Lurie" is a resident of the Commonwealth of Virginia for the purpose of diversity jurisdiction. Lurie is a member and active participant to the Select Committee on January Six. Lurie also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(h) PETER "PETE" AGUILAR, known from hereinafter as "Aguilar" is a resident of the state of California for the purpose of diversity jurisdiction. Aguilar is a member and active participant to the Select Committee on January Six. Aguilar

also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(i) STEPHANIE MURPHY, known from hereinafter as "Murphy" is a resident of the state of Florida but is a member and active participant to the Select Committee on January Six. Murphy serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(j) JAMIE RASKIN, known from hereinafter as "Raskin" is a resident of the state of Maryland for the purpose of diversity jurisdiction. Raskin is a member and active participant to the Select Committee on January Six. Raskin also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(k) ELIZABETH "LIZ" CHENEY, known from hereinafter as "Cheney" is a resident of the state of Wyoming for the purpose of diversity jurisdiction. Cheney is a member and active participant to the Select Committee on January Six. Cheney also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(l) ADAM KINZINGER, known from hereinafter as "Kinzinger" is a resident of the state of Illinois for the purpose of diversity jurisdiction. Kinzinger is a member and active participant to the Select Committee on January Six. Kinzinger also serves as an agent or officer of the Corporation United States for diversity jurisdictional purposes.

(m) CABLE NETWORK NEWS, known from hereinafter as "CNN" is a resident of the state of Mississippi for the purpose of diversity jurisdiction. CNN has a place of contact at 1 CNN Center, Atlanta, Georgia, 30303.

VII.                    <u>BACKGROUND</u>

1.    Trump, is a political republican and is the 45th (former) President of the United States of America.

2.    On November 3, 2020 and during the course of the federal general election for what would have been Trump's second term to the Office of the President, a series of what arguably may be described as a massive coup was executed against Trump, which included various instances of ballot harvesting, voter fraud, and or faulty systems creating inaccurate results throughout the sovereign states of the union.

3.      Successful execution of the aforesaid coup afforded the Office of the President to democratic challenger JOSEPH R. BIDEN known from hereinafter as "Biden".

4.      On or about December 16, 2020, Trump invited his political grass root supporters to Washington, District of Columbia, in a constitutional assemblage for Americans who were aggrieved by the flagrancy in which the presidential coup was allowed to transpire by members from both, the Legislative and Judicial Branches of federal government.

5.      The invitees in attendance to include Evans numbered more than two million American citizens from every state, territory and possession.

6.      At approximately noon on the date of January 6, 2021, Trump delivered a public address to the American citizens who had gathered collectively on the grounds of the Washington Ellipse. During his speech, Trump uttered words that included the following (See Attachment A).

7.      Shortly after Trump concluded his speech and returned to the interior of the White House, violence erupted between Trump supporters and a variety of local and federal uniformed police departments assigned to the Washington, DC area.

8.      To the date of this filing, the identities of the instigators for the violence have yet to be determined in spite of ongoing arrest by the federal government of nearly one thousand American citizens from all across the United States.

9.     At approximately 4:10 pm EST, Evans, while using a portable loudspeaker device was recorded on camera by video journalist SANDY BACHROM known from hereinafter as "Bachrom", reciting words from Trump that were made during one of the President's earlier public addresses on that day, to wit:

> "Mike Pence did not have the courage to do what should have been done to protect our country and our Constitution, giving the states the chance to certify a corrected set of facts, not the fraudulent or incorrect ones which they were asked to previously certify. USA demands the truth!"

10.   EVANS was subsequently charged by way of Criminal Indictment by the federal government in connection with the events that transpired at the U.S. Capitol that day.

11.    On January 6, 2021, LANG and PEZZOLA, joined with the large mass of fellow American citizens on the grounds of the Washington DC Ellipse, where they also witnessed the public speech performed by President Donald J. Trump.

12.    Shortly following the President's speech LANG and PEZZOLA accompanied other citizens who, at the time, were peaceful protestors as they walked from the speech grounds, and on to the grounds of the U.S. Capitol.

13.    During the course of historic events that followed, LANG and PEZZOLA became intertwined in the mayhem of the day for the purpose of saving human lives and or mere frustration associated with government sponsored aggression which had been specifically directed at the Trump supporters.

14.     It is not in dispute that LANG was recorded by way of video, and is further credited for saving the lives of two American citizens, Phillip Anderson, and Tommy Tatum.

15.     LANG also attempted to save the life of Rosanne Boyland, the pregnant young woman who ultimately died of injuries suffered during the unrest at the Capitol on the relevant day.

16.     During the events of January 6, 2021, PEZZOLA was recorded by way of video and captured in a moment of anger, frustration and rage where PEZZOLA is depicted destroying a single window that was located on the east side of the U.S. Capitol structure.

17.     The video recorded actions of PEZZOLA, prompting the federal government to subject him to prosecution by way of Criminal Indictment in the days to follow.

18.     In the course of LANG'S life saving attempts he experienced physical contact with uniformed police officials, prompting the federal government to subject LANG to prosecution by way of Criminal Indictment by the federal government in connection with the events that transpired at the U.S. Capitol that day.

19.     On February 9, 2021, Articles of Impeachment were introduced by the majority of Congressional House Democrats. For relevance to the instant matter,

the Article of Impeachment charged that Trump, "…[I]ncited by President Trump, members of the crowd he had addressed, in an attempt to … interfere with the Joint Session's solemn constitutional duty to certify the results of the 2020 Presidential election, unlawfully breached and vandalized the Capitol, injured and killed law enforcement personnel, menaced Members of Congress, the Vice President and Congressional personnel, and engaged in other violent, deadly, destructive, and seditious acts,"…

20.    On February 13, 2021, Trump was acquitted of all charged allegations within the Articles of Impeachment.

21.    On July 1, 2021, the Democrat controlled, Congressional House of Representatives formed a constitutionally deficient group, previously identified in this pleading as "the Committee", in effort to unlawfully employ the criminal justice system as a political means to achieve through the back door, what due process and the Senate Impeachment Trial's acquittal, denied to the Democratic Party by way of the front door. Moreover, actions taken by the Committee appear to violate the doctrine of Torturous vindictive prosecution for political causes.

22.    Trump has and continues to contemplate another national campaign for the 2024 nomination for President of the United States.

23.    On June 9, 2022, the Committee produced or caused to be produced and released, a video production known from hereinafter as "the video" to CNN and

others, claiming that the production was a January Sixth Evidentiary Exhibit and averring that the production was "Never – before seen video footage of the riot."

24.     Within footage from the video production were segments of Evans, Pezzola, and Lang.

25.     The video depicted Evans utilizing a load speaker on January 6, 2021, during the recitation of the relevant utterances from Trump as well as Pezzola and Lang as set out within the Civil Complaint and incorporated herein.

26.     The Committee willfully and with fraudulent intent to deceive, altered the time of Evans' actual broadcasted event of from 4:10 PM EST to 2:24 PM EST, and in a manner so as to deceive and create the illusion that Evans, Pezzola and Lang was using the words of Trump in real time to incite unlawful rioting and or the murder of Mike Pence.

27.     The Committee thereafter proceeded to utilize the image of Evans in a way to further promote its politically based agenda to substantiate criminal conduct so as to justify referral to the Department of Justice for the criminal prosecution of Trump in relations to inciting the riot and events of January 6, 2021.


VIII.  CAUSE FOR THE TEMPORARY RESTRAINING ORDER TO ISSUE

The instant Temporary Restraining Order "TRO" should issue to protect the Applicants and their joiner from irreparable harm to their reputations, and or

freedoms, and or financial property. In that, the Respondents, acting as a collective unit but in the interest of the Democratic Party, have: (1) utilized the actions of EVANS, PEZZOLA, and LANG to criminally manufacture video evidence with intent to (1) deceive, and in effort to justify submitting a criminal referral for prosecution (See New York Times – April 10, 2022) against TRUMP and others to include but not limited to the Applicants, and (2) to further persuade or influence a grand or petite jury or both; and (3) the Respondents have utilized the video in effort to conduct the criminal trials of Pezzola and Lang before a defacto jury of public influenced media opposed to a judicial assembled jury of the Applicant's peers.

The respondents positively identified an image within its manufactured video and for evidentiary value, as Pezzola, absent the due process safeguards in which the Constitution guarantees for accuracy challenges. Instead Pezzola has been personally identified, placed on trial, and convicted by the Committee as having been a "Proud Boy" and an "insurrectionist" without the rightful benefit of adversarial proceeding before the Judiciary having occurred.

The respondents broadcasted or caused its video to be broadcasted by way of television and or video streaming devices to hundreds of millions of Americans and potential jurors with intent to obscure the facts on the merits and to taint the

jury pool against the respondents and in favor of criminal convictions in furtherance of a political agenda.

The Respondent's intended outcome however, is predicated in part upon theoretical conduct in which the Supreme Court of the United States has determined to be non-criminal political speech under the First Amendment, which rest beyond the reach of criminal statutes.

Further, because an accused is not entitled to a hearing before a grand jury, nor to present evidence, nor to be represented by counsel; the Democratic controlled District of Columbia and any federal grand jury derived thereof, may act fallible but secretly, and in a manner normally abhorrent to due process.

It is for this reason that pre-emptive actions should be taken by this Honorable Court to protect the due process rights guaranteed the Applicants to include Trump under the federal Constitution.  "...to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort. *** ...and for an agent - to pursue a cause of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." *Bordenkircher v. Hayes,* 432 U.S. 357 (1978) (Citation omitted).


IX. THE POLITICAL BIAS OF THE INVESTIGATING / DECISION MAKING MEMBERS OF THE COMMITTEE AGAINST TRUMP WHICH FOSTERED THE MANUFACTURED VIDEO

In *Beck v. Washington,* 369 U.S. 541 (1962), the Supreme Court determined that a conviction obtained in either a state or federal court cannot be sustained, when the condition was composed of the respondent's political enemies. "...if we did, we would sanction prosecution for private, not public, purposes. Whenever unfairness can be shown to infect any part of a criminal proceeding, we should hold that the requirements of due process are lacking." Id 581.

The entire record to this matter is permeated with personal and politically motivated bias against Trump, inasmuch that the appearance of unfairness by the Committee members is tantamount to unconstitutional persecution. Moreover, the Committee is irresponsibly contemplating use of the federal criminal justice system as a political tool against Trump, simply for gaining tactical advantage to thwart another successful campaign in the run for President of the United States in 2024.

Each Committee member has publically uttered bias statements against Trump. Statements that involve the same subject matter as the members currently sit on at the investigatory helm of federal government.

Our Constitution was drawn on the theory that there are certain things government may not do to the citizen, and that there are other things that may be done only in a specific manner. The relationship of the federal government to a man charged with crime is carefully defined. Its power may be marshaled against

him, but only in a defined way. When we allow this substitute method, we make an innovation that does not comport with that due process which the Fifth Amendment requires of the federal government. When the federal government prepares to inquire into charges that a person has violated federal law, the Fifth Amendment tells us how it can proceed. However, where no cognizable offense has been perpetrated by the targeted party, no inquiry by the federal government is allowed under our current Constitution.

The Select Committee on January Six, it is true, returns no indictment. Yet in a real sense, the hearing on charges that Trump has in some way committed a federal offense is a defacto trial. Moreover, these hearings before the Committee may be televised in part or broadcast on the radio or even leaked to the press. In our day we have seen Congressional Committees probing into alleged criminal conduct of witnesses appearing on the television screen. This is, in reality a trial in which the whole nation sits as a jury. Their verdict does not send men to prison, but it often condemns the targeted individual(s) or produces evidence to convict, and even saturates the nation with prejudice against an accused in such a manner that a fair trial may be impossible. As stated in 37 A.B.A. J. 392 (1951), "If several million television viewers see and hear a politician, a businessman or a movie actor subjected to searching interrogation without ever having an opportunity to cross-examine his accusers, or offer evidence in his own support, that man will stand

convicted, or at least seriously compromised in the public mind, whatever the later formal findings may be." Use of this procedure by the Committee puts in jeopardy our traditional concept of the way men to include Trump, should be tried, and replaces it with "a new concept of guilt based on inquisitorial devices. As written by Alan Barth, in Government by Investigation (1955), "…the legislative trial serves three distinct though related purposes: (1) *it can be used to punish conduct which is not criminal*; (2) it can be used to punish supposedly criminal conduct in the absence of evidence requisite to conviction in a court of law; and (3) it can be used to drive or trap persons suspected of `disloyalty' into committing some collateral crime such as perjury or contempt of Congress, which can then be subjected to punishment through a judicial proceeding. Barth wrote of hearings in the so-called loyalty cases. But the reasons apply to any hearing where a person's job or liberty or reputation is at stake. Barth wrote of hearings held by Congressional Committees. Yet the evil is compounded where the political agenda of the hearing have become a "Committee trial." And while a court would not enjoin the [typical] Congressional Committee, the federal courts are duty bound to keep committees within limits when the court's jurisdiction is properly invoked as is the case here. See - *Hannah v. Larche*, 363 U.S. 420, 499-502 (1960).

Each member of the Committee harbored both personal and political animosities towards Trump as evidenced by the member's own utterances, to wit:

**BENNIE THOMAS (CHAIRPERSON)(D)**
**Mississippi**

> MISSISSIPPI FREE PRESS January 7, 2021 - "*Never in my life did I ever expect to see a sitting president incite violent extremists* at a rally and, after they stormed both the House and Senate chambers, raised the Confederate flag and erected a noose, tell them in a video that he loved them," …. "locked in the Capitol and securing face masks for members"… "The events of today are the *inevitable result of the tyrannical and idiotic leadership of Donald Trump. It is domestic terrorism and armed insurrection.* This possibly would not have happened if Senate Republicans stepped up to the plate and removed their despicable leader."

**ADAM SCHIFF (MAJORITY COMMITTEE MEMBERS)(D)**
**California**

> WSJ  May 12, 2020 - "Americans expect that politicians will lie, but sometimes the examples are so brazen that they deserve special notice. Newly released Congressional testimony shows that *Adam Schiff spread falsehoods shamelessly about Russia and Donald Trump for three years* even as his own committee gathered contrary evidence."

**ZOE LOFGREN (MAJORITY COMMITTEE MEMBERS)(D)**
**California**

> April 16, 2021 Press Release (Committee on House Administration) - **"*Today marks 100 days since violent insurrectionists, incited and encouraged by Former President Trump*…"**

**ELAINE LURIA (MAJORITY COMMITTEE MEMBERS)(D)**
**Virginia**

> ARTICLE OF IMPEACHMENT, January 11,2021 - "President Trump, addressed a crowd at the Ellipse in Washington, DC. There, he reiterated false claims that ``we won this election, and we won it by a landslide''. *He*

***also willfully made statements that, in context, encouraged--and foreseeably resulted in--lawless action at the Capitol,*** such as: ``if you don't fight like hell you're not going to have a country anymore''. Thus incited by President Trump, members of the crowd he had addressed, in an attempt to, among other objectives, interfere with the Joint Session's solemn constitutional duty to certify the results of the 2020 Presidential election, unlawfully breached and vandalized the Capitol, injured and killed law enforcement personnel, menaced Members of Congress, the Vice President, and Congressional personnel, and engaged in other violent, deadly, destructive, and seditious acts."

## PETE AGUILAR (MAJORITY COMMITTEE MEMBERS)(D) California

PRESS RELEASE,  20 January 2017 – "While I respect the office of the presidency, ***I harbor deep concerns about the man who has assumed the position. Donald Trump spent eighteen months normalizing racism and sexism.***"

## STEPANIE MURPHY (MAJORITY COMMITTEE MEMBERS)(D) Florida

PRESS RELEASE, 13 January 2021: - "Today's impeachment is not about dividing this country. It's about uniting all patriotic Americans against the unconstitutional actions of an out-of-control president—***a president who incited insurrection against our great nation,***"

## JAMIE RASKIN (MAJORITY COMMITTEE MEMBERS)(D) Maryland

PRESS RELEASE, 4 February 2021: - "Today, we offered President Trump the opportunity to testify about the events of January 6 and he refused to do so. Despite his lawyers' rhetoric, ***any official accused of inciting armed violence against the government of the United States should welcome the chance to testify openly and honestly—that is, if the official had a defense. We will prove at trial that President Trump's conduct was indefensible.*** His immediate refusal to testify speaks volumes and plainly establishes an adverse inference supporting his guilt."

In addition, the "incitement of insurrection" article of impeachment was introduced by Reps. *Jamie Raskin*, D-Md., Ted Lieu, D-Calif., and David Cicilline, D-R.I., along with more than 210 Democratic co-sponsors.

## ELIZABETH "LIZ" CHENEY (MINORITY COMMITTEE MEMBERS)(R) Wyoming

> THE NEW YORKER 11 November 2021: "confronting a domestic threat that we've never faced before: ***a former President who's attempting to unravel the foundations of our constitutional republic***, aided by political leaders who have made themselves willing hostages to this dangerous and irrational man."

## ADAM KINZINGER (MINORITY COMMITTEE MEMBERS)(R) Illinois

> NEWS WEEK, 7 May 2022, "***As expected the lies continue***. Not in any way true. The truth however will be vindicated by the findings of the@January6thCmte,"

The above public recitations clearly meet the preponderance of the evidence standard for establishing relevant bias among all investigative members of the Committee wherein the TRO should justifiably issue. "The touchstone of due process is freedom from arbitrary governmental action, *Wolff v. Mcdonnell (1974)*, 418 U.S., at 558," *Ponte v. Real*, 471 U.S. 491, 495 (1985). The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative or quasi adjudicative proceedings safeguards the two central concerns of procedural due

process, (1) the prevention of unjustified or mistaken deprivations, and (2) the promotion of participation and dialogue by affected individuals in the decision making process. See - *Carey* v. *Piphus*, 435 U.S. 247, 259-262, 266-267 (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See -*Mathews* v. *Eldridge*, 424 U.S. 319, 344 (1976). At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done, See - " *Joint Anti-Fascist  Committee* v. *McGrath*, 341  U.S.  123,  172 (1951)  (Frankfurter,  J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). "But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *In re Murchison*, 349 U.S. 133, 136 (1955). Each member to the Committee was present i[n] the U.S. Capitol during the time of civil unrest on January 6, 2021, inasmuch that no alleged victim may be allowed to investigate his or her own cause under our current system of justice.

X.  <u>THEORY OF PROSECUTION FOR NON CRIMINAL CONDUCT THAT</u>
<u>PREDICATED THE VIDEO</u>

The Committee's theory on making a referral for the criminal prosecution against Trump is that, Trump, through his January 6, 2021 speech contained [i]mplied threatening language, thereby incitin[g] the violence which erupted at the Capitol.

This theory is legally flawed, and at best, appears to be a politically motivated "which-hunt" aimed to defy the ruling authorities of the United States Supreme Court on First Amendment protected political speech. "Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality. " *Hohn v. United States*, 524 U.S. 236, 252-53 (1998).

Federal law generally allows for the legislative regulation of unprotected speech. Accordingly, the Supreme Court of the United States has determined that at least one class of speech under the First Amendment, is beyond the reach of criminal penalties prescribed by federal law. This class of protected speech is known as "Political Speech", or "Political Hyperbole". Merriam-Webster Dictionary, defines the term "hyperbole" to mean: noun- hy*per*bo*le, extravagant exaggeration.

23

Assuming arguendo, that the Committee's theory of prosecutorial conduct against Trump is honorably intended, pursuant to 53 years of controlling Supreme Court authority, the Committee's theory rest on unconstitutional grounds. In that, the Committee's theory is predicated on non criminal conduct as determined by the highest court in the land.

*Watts v. United States,* 394 U.S. 705 (1969), was the first Supreme Court to rule that threatening political hyperbole is a type of speech that does not fit within the statutory terms of relevant federal criminal statutes. Thereby effectively shielding this political class of speech against criminal prosecution. But, *Watts,* would not be the last Supreme Court to make such a determination of law. "The First Amendment protects against the government." *United States v. Stevens,* 559 U.S. 460 (2010). However, the threatened criminal referral for prosecution by the Committee and against Trump, is of itself evidence of the danger in putting faith in government prosecutorial restraint where politics are at issue.

In *Gertz v. Weich,* 418 U.S. 323 (1974) Id at 342, Justice Alito recognized the possibility of a First Amendment issue. "It can be argued that section 875(c), if not limited to threats made with intent to harm, will chill statements that do not qualify as 'true threats', e.g., statements that may be literally threatening but are plainly not meant to be taken seriously."

Prior to *Watts,* every federal district and circuit court of appeals, adopted what had been termed, the "objective construction" standard in relation to all federal threatening speech related prosecutions. Under the objective construction standard, it would support the conviction of anyone making a statement that would reasonably be understood as a threat, so long as the respondent intended to make the statement and knew the meaning of the words used; or a reasonable person in the respondents place would have foreseen that the statements made to be understood as indicating a serious intent to commit the act. The *Watts,* Supreme Court, held that politically charged speech was [not] a "true threat", but merely hyperbole.

Following *Watts,* the Supreme Court in *Rogers v. United States,* 422 U.S. 35 (1975), prohibited relevant federal criminal statutes from having such a broad construction, that there would be a substantial risk of conviction for a merely crude or careless expression of a political enmity. Id at 44. The provisions, constitutionally protects political speech because of the possibility that the government will prosecute and potentially convict somebody engaging only in political speech, at the core of what the First Amendment is designed to protect. SEE - *Virginia v. Black,* 538 U.S. 343 (2003) Id at 365. This is exactly the position taken by the Committee members against Trump.

However, *Watts* neglected to define the term, *"true threat"*. *Black,* was the first Supreme Court to unambiguously establish the judicial meaning for the term "true threat". *Black,* determined that "a true threat encompasses those statements where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals." Id at 357.

The *Rogers* court determined that, applying federal statutes with an eye to the danger of encroaching on constitutionally protected political speech, "fell outside the reach of the criminal statutes [AS A MATTER OF LAW"]. Id at 44. (Emp added)

*Rogers,* further held that objective construction, also embodies a "negligence standard", which charges the respondent with responsibility for the effect of his statements on his listeners. Id at 47. Again, this is precisely the theory for criminal liability that the Committee members' predicates its threatened criminal referral against Trump upon. The *Rogers* court went on to determine that a negligence standard was not intended in criminal statutes. Thereby again barring criminal prosecutions against this class of protected political speech. "The language of the political arena, like the language used in labor disputes, is often vituperative, abusive, and inexact." *Watts,* Id at 708. "...and often speaks bluntly and recklessly,

embellishing their respective positions with imprecatory language." *Linn v. United Plant Guard Workers of America,* 383 U.S. 53 (1966) Id at 58.

In *Elonis v. United States,* 135 S. Ct. 2001 (2015), the Supreme Court consider the mens rea element to relevant federal criminal statutes involving the element of threats, after having first adopted the negligence standard from *Rogers,* supra. Id at 2011. The *Elonis* court modified the objective standard's [new] companion, which is today's "reasonable person's" standard. Such as, how Trump's speech might be understood by a reasonable person. This standard is a familiar feature of civil liability in tort law, but again, it's inconsistent with criminal statutes. Id at 2011.

The court held that, the "presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *X-Citement Video*, 513 U. S., at 72. In the context of federal criminal statutes, proof of scienter is required along with proof that a communication was transmitted, and that it contained a threat, because scienter is "the crucial element separating legal innocence from wrongful conduct," Id., at 73, "...*is the threatening nature of the communication, and the mental state requirement must apply to the fact that the communication contains a syllabus threat*." Id.

> "...Elonis's conviction was premised solely on *how his posts would be viewed by a reasonable person*, again, a standard feature of civil liability in tort law but inconsistent with the conventional criminal conduct and the requirement of 'awareness of some wrongdoing.'"

27

"Having liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the respondent thinks— (and as it relates to Trump) "reduces culpability on the all-important element of the crime to negligence," and we "…have long been reluctant to infer that a negligence standard was intended in criminal statutes," *Elonis quoting Rogers v. United States*, 422 U. S. 35, 47 (1975) (respondent could face "liability in a civil action for negligence, but he could only be held criminally for an evil intent actually existing in his mind"). Under these principles, "what [Elonis / Trump] thinks" does matter.

Accordingly, what Donald Trump thought behind his utterances on January 6, 2021, "does matter" with regard to criminal liability. *Hamling v. United States*, 418 U. S. 87 (1974) determined that the mental state requirement is satisfied if the respondent transmits a communication for the purpose of issuing a threat ***or with knowledge that the communication will be viewed as a threat***, and so again, what Donald Trump, though[t] in this regard does matter. More importantly, the Committee lacks evidence as to what Trump was [thinking] during the presentation of his January 6, 2021 speech. For this reason no criminal conduct can be legally established based upon the theoretical analysis of the Respondents.

The *Elonis* court, adopting the holding in *Watts,* stated: "Because federal law criminalizes speech, the First Amendment requires that the term "threat" be limited to the narrow class of historically unprotected communications called "true

threats." To qualify as a true threat a communication must be a serious expression of an intention to commit unlawful physical violence." Id at 2018.

Accordingly, in adopting the holding in *Watts*, the *Elonis,* court [again] excluded "political speech", from reach of the federal criminal statutes. Id at 2019.

Collectively, the *Watts, Rogers, Black, Citizens,* and *Elonis,* Supreme Courts, have effectively: (1) prohibited political speech and hyperbole from criminal prosecutions under federal statutes; (2) prohibited the objective construction standard to federal criminal prosecutions; (3) prohibited negligence standard prosecution's under federal law; and (4) modified the reasonable person standard to federal prosecutions.

"The general rule is that a guilty mind is a necessary element in the indictment and proof of every crime." *Elonis,* supra, Id at 2009. "In determining Congress's intent, we start from a long-standing presumption, traceable to the common law that Congress intends to require a respondent to possess a culpable mental state regarding each of the statutory elements that criminalizes otherwise innocent conduct."

XI.          <u>CONCLUSION AND PRAYER FOR RELIEF</u>

Wherefore, Trennis Jewell Evans III, Dominic Pezzola, Edward Jacob Lang and joinder Donald J. Trump's, claims are *inter alia*, that the conduct of Trump

currently under investigation by the Committee members, constitutes political speech which is a class of protected speech under the First Amendment to the Constitution of the United States, and that, the plaintiffs applicable non criminal conduct as held by United States Supreme Court decisions on the subject matter cited supra, rest beyond the reach of both federal criminal statutes, and the grand jury itself, thereby granting of the TRO is warranted.

For all reasons presented, the Select Committee on January Six, clearly should be enjoined from presenting a criminal referral to the United States Department of Justice for grand jury consideration, based upon the deceptive evidentiary value of its June 9, 2022 video tape relating to the relevant subject matter, the doctrine of actual innocence, the doctrine of collateral estoppel, and upon the principles established under the doctrine of Torturous vindictive prosecution for political causes.

Further, the Court should enjoin the Select Committee on January Six, and CNN and all unknown media sources from airing, distributing, publishing, broadcasting, using or causing to be used, the June 9, 2022 video production any anyway whatsoever.

Further, the Applicants by and through undersigned counsel prays that this Court grant the APPLICATION FOR TEMPORARY RESTRAINING ORDER PENDING RELIEF BY PERMANENT INJUNCTION.

Respectfully Submitted,


/s/<u>Mark Lieberman</u>
MARK LIEBERMAN
1704 Pine Hills Lane
Corinth, Texas 76210
(817) 905-3772
Mjc358@hotmail.com


STEVEN A. METCALF II, ESQ.
Metcalf &amp; Metcalf, P.C.
99 Park Avenue, 6 th Flr.
New York, NY 10016
(Office) 646.253.0514
metcalflawnyc@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on [date] I electronically filed the foregoing document with the United States District Court for the Eastern District of Texas at Plano, by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

[list the name of each case participant who is registered as an ECF Filer].

I further certify that on December 1, 2022 I served a copy of the foregoing document on the following parties or their counsel of record ECF, or by commercial carrier for delivery within 3 days after the 60 day waiver period for service has expired:


/s/<u>Mark Lieberman</u>
    MARK LIEBERMAN
    1704 Pine Hills Lane
    Corinth, Texas 76210
    (817) 905-3772
    <u>Mjc358@hotmail.com</u>


    STEVEN A. METCALF II, ESQ.
    Metcalf &amp; Metcalf, P.C.
    99 Park Avenue, 6 th Flr.
    New York, NY 10016
    (Office) 646.253.0514
    metcalflawnyc@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION

TRENISS JEWELL EVANS III,          )
DOMINIC PEZZOLA,                   )
EDWARD JACOB LANG                  )
     *Plaintiffs*               )
                                )
*Vs*.                              )   Case No. Case No. 4:22-cv-00682-SDJ
                                )
THE SELECT COMMITTEE ON            )
JANUARY SIX                        )
BENNIE THOMPSON, ADAM              )
SCHIFT, ZOE LOFGREN, ELAINE        )
LURIA, PETE AGUILAR,               )
STEPHANIE MURPHY, JAMIE            )
RASKINS, ELIZABETH CHENEY,         )
ADAM KINZINGER                     )
     *Respondents*              )

## CERTIFICATE OF ATTORNEY FOR THE APPLICANT

The herein Certificate is presented pursuant to Rule 65(b)(1)(B) F.R.Civ.P. –

     I, the undersigned attorney for the applicant Trennis Jewell Evans III, duly certify that I have made no effort to serve notice upon the responding parties to this cause for reasons of dire urgency, so as to prevent irreparable injury against the person and business property of my client and that of the joinder. In support of the herein, counsel states:

On or about July 2, 2022 and less than 30 days after the Respondents publicly announced that it (the Committee) had enough evidence to include the evidence from Treniss Jewell Evans III, as set out within the instant Application for TRO, to make an actual criminal referral against a private citizen or citizens predicated upon the facts as set forth within the paragraphs and subparagraphs to the attached APPLICATION FOR TEMPORARY RESTRAINING ORDER PENDING RELIEF BY PERMANENT INJUNCTION.

Respectfully Submitted,

/s/Mark Lieberman
MARK LIEBERMAN
1704 Pine Hills Lane
Corinth, Texas 76210
(817) 905-3772
Mjc358@hotmail.com


STEVEN A. METCALF II, ESQ.
Metcalf &amp; Metcalf, P.C.
99 Park Avenue, 6 th Flr.
New York, NY 10016
(Office) 646.253.0514
metcalflawnyc@gmail.com